# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION
# CASE NO. 4:09-CV-70-M

BLUEGRASS TELEPHONE CO., INC.            PLAINTIFF

v.

QWEST COMMUNICATIONS
COMPANY, LLC and QWEST
COMMUNICATIONS CORPORATION           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant Qwest Communications Company LLC ("Qwest") to dismiss Plaintiff Bluegrass Telephone Company, Inc.'s ("Bluegrass") claims for breach of implied contract resulting from violation of filed tariffs, unjust enrichment, tortious interference with business relations, and violation of Section 201(b) of the Communications Act.[1] The matter is fully briefed and a hearing on the motion was held on March, 19, 2010. For the reasons that follow, the case is hereby **STAYED**.

## I. BACKGROUND

Bluegrass is a Competitive Local Exchange Carrier ("CLEC") providing phone service, cable TV, and Internet to individual and business consumers in rural Kentucky. Bluegrass also provides originating and terminating access services to long distance companies ("interexchange carriers" or "IXCs") like Qwest, which allows those long distance companies to transmit the long distance calls of their customers over Bluegrass's

---

[1] The parties agree that "Qwest Communications Corporation" should be dismissed as a Defendant and Plaintiff has voluntarily dismissed its Kentucky Unfair Trade Practices Act and civil conspiracy claims.

telephone lines to Bluegrass's customers. Access charges that apply to interstate long distance telephone calls are regulated and fall under the exclusive jurisdiction of the Federal Communications Commission ("FCC"), and access charges for long distance calls made within Kentucky are regulated and fall under the exclusive jurisdiction of the Kentucky Public Service Commission ("KPSC"). Since December 15, 2006, Bluegrass has billed Qwest on a monthly basis for use of its services pursuant to the rates set forth in its interstate and intrastate tariffs. On May 1, 2008, Qwest stopped paying Bluegrass, at least for certain traffic, but nonetheless continues to deliver calls to Bluegrass's network. Bluegrass therefore brought this suit to recover what it believes it is owed under the tariffs.

Qwest contends that this case is one in a series of "traffic pumping" lawsuits that have sprung up in the past several years. In such cases, a CLEC like Bluegrass enters into a business relationship with a Free Calling Service Company ("FCSC"), such that the FCSC sends a conference bridge, chat line computer or router to the CLEC, who installs the equipment in its central office. The CLEC then assigns blocks of telephone numbers to the FCSC, and the FCSC advertises "free services" on its website and encourages customers to call the telephone numbers assigned. Individuals then place long distance calls to these telephone numbers and participate in conference calls, pornographic chat, or international calls all purportedly "free" of charge. The CLEC then bills long distance providers, like Qwest, for switched access charges and splits the switched access revenues with their FCSC partners. Qwest believes these services are not compensable under the tariffs, and not otherwise compensable because they seek to vary the terms of the tariffs.

2

## II. DISCUSSION

The central question presented in this motion is whether Plaintiff's claims for breach of implied contract resulting from violation of federal and state tariffs, unjust enrichment, tortious interference with business relations, and violation of Section 201(b) of the Communications Act are barred by the filed rate doctrine. Bluegrass argues that the doctrine cannot bar the claims because they are (at least some of them) in the alternative and the FCC has suggested that where certain communications services are not covered by a tariff they may still be compensable. Qwest Commc'ns Corp. v. Farmers & Merchants Mutual Tel. Co., No. EB-07-MD-001, 2009 WL 4073944, ¶ 24 n.96 (2009) (citations omitted) (finding that the services in question were not covered by the tariff and explaining that "[t]his is not to say that [the LEC] is precluded from receiving any compensation at all for the services it has provided to [the IXC].") (citing New Valley Corp. v. Pacific Bell, Memorandum Opinion and Order, 15 FCC Rcd 5128, 5133, ¶ 12 (2000)). Bluegrass alternatively argues that the Court should refer the case to the FCC or stay the case pending resolution of other, similar cases already before the FCC. The Court concludes that a stay is warranted.

The FCC has recognized that so-called "traffic pumping" schemes "manipulate the Commission's rules to achieve a result unintended by the rules,"Qwest Commc'ns Corp. v. Farmers & Merchants Mutual Tel. Co., No. EB-07-MD-001, 2007 WL 2872754, *8 (2007), but so far it has not addressed the problem with any regulation.[2] Not surprisingly, parties are

---

[2] The FCC issued a Notice of Proposed Rulemaking In the Matter of Establishing Just and Reasonable Rates for Local Exchange Carriers back in 2007 but has not acted on it since that

uncertain about what their rights and responsibilities are in this context and have increasingly begun to seek answers from the federal courts. Several "traffic pumping" cases are currently pending in the United States District Court for the District of South Dakota. See Sancom, Inc. v. Qwest Communications Corp., Civ. No. 07-4147 (KES), 2010 WL 960005, *4 (D.S.D. March 12, 2010). There are also nine cases pending in the United States District Court for the Southern District of Iowa; three cases pending in the United States District Court for the Northern District of Iowa; two cases pending in the United States District Court for the Southern District of New York; and one case pending in the United States District Court for the District of Minnesota. Id. And then there is this case.

So far at least three courts have issued stays and referred questions to the FCC under the doctrine of primary jurisdiction, see Tekstar Commc'ns, Inc. v. Sprint Commc'ns Co., Civ. No. 08-1130 (JNE/RLE), 2009 WL 2155930 (D. Minn. July 14, 2009); All Am. Tel. Co., Inc. v. AT & T, Inc., Civ. No. 07-861 (WHP), Docket 88 (S.D.N.Y. Jan. 19, 2010); Sancom, Inc. v. Qwest Communications Corp., Civ. No. 07-4147 (KES), 2010 WL 960005 (D.S.D. March 12, 2010), and similar motions are pending in a number of other cases. Sancom, 2010 WL 960005, at *4, n.4 (collecting cases). In the first of the cases referred to the FCC, Tekstar, a plaintiff Local Exchange Carrier ("LEC") brought claims against an IXC for alleged failure to pay tariffs, violation of the Communications Act related to the failure

---

time. See WC Docket No. 07-135, 22 F.C.C.R. 17989, 2007 WL 2872755 (F.C.C. October 2, 2007). Nor does it appear that such action will be forthcoming any time soon given that the FCC's Fall 2009 Unified Agenda calls the rulemaking "nonsignificant" and has it set for "long-term action." Unified Agenda of Federal Regulatory and Deregulatory Actions–Fall 2009, Federal Communications Commission, 74 Fed. Reg. 64522, 64564 (December 7, 2009).

to pay the tariffs, and quantum meruit. The defendant IXC moved, inter alia, to dismiss the quantum meruit claim on the ground that it was barred by the filed rate doctrine. The court declined. It noted that there was a "dispute whether the filed rate doctrine applies to bar Tekstar's quantum meruit claim" and there was a question "how, if the tariff is inapplicable, those services otherwise fit into the relevant regulatory scheme." Id. at *3. It therefore issued a stay of the proceeding and referred the questions to the FCC.

The United States District Court for the Southern District of New York similarly referred a case to the FCC. All Am. Tel. Co., Civ. No. 07-861 (WHP), Docket 88 (S.D.N.Y. Jan. 19, 2010). In so doing, it explained that this "area of telecommunication regulation is in dynamic flux – recently, the FCC reversed its own decision in one case, and the Iowa Utilities Board issued a ruling potentially contrary to FCC decisions on where calls terminate. Thus, these issues . . . are ripe for determination and clarification by the regulatory agency." Id. at 3. It also noted that the "IUB Decision and Farmers III illustrate [that] the question of what relationships between telephone companies and others constitute actual customer or 'end user' relationships is something within the discretion of the FCC" and found that "even if the conference chat line companies are not end users, Plaintiffs may be entitled to reasonable compensation for their services . . . . [and] [s]uch a determination could also be informed by the FCC's expertise." Id. Finally, it observed that with "more than 20 similar actions pending around the country, and several referrals to the FCC already underway, this Court finds that there is a substantial risk of inconsistent rulings." Id.

In Sancom, Inc. v. Qwest Communications Corp., Civ. No. 07-4147 (KES), 2010 WL

5

960005 (D.S.D. March 12, 2010), the United States District Court for the District of South Dakota recently referred three questions to the FCC after initially determining that the filed rate doctrine barred the non-tariff claims of an alleged "traffic pumping" plaintiff CLEC. The court explained that the FCC "has not provided guidance on the impact of the detariffing regime for CLECs on this issue" and that "[r]eferral of the tariff application issue would . . . promote uniformity and consistency within the particular field of regulation." Id. at *8. It therefore asked the FCC for: "(1) [a] determination of whether Sancom is entitled to collect switched access charges for calls to numbers assigned to free calling providers pursuant to its interstate access tariff; (2) if Sancom's interstate access tariff does not apply to the services at issue, [a] determination of the proper legal classification of these services and [a] determination of whether Sancom is entitled to compensation for them; and (3) [a] determination of a reasonable rate for these services." Id. at *4.

This Court agrees that FCC guidance is warranted. Given the technical nature of the questions presented and the fact that at least three other courts – the District of Minnesota, Southern District of New York, and District of South Dakota – are currently awaiting rulings from the FCC on those questions, the Court concludes that the instant matter should be stayed until the FCC has had an opportunity to resolve the pending cases. Because the claims and issues in this case are closely related to the claims and issues in Tekstar, All American, and Sancom, however, there is no need to refer the instant case to the FCC. Once the FCC decides the other cases, the law that governs this case should be clear and the Court should simply be able to apply it. Accordingly, the Court will stay the proceedings until such time

as the FCC rules on the pending "traffic pumping" cases or otherwise resolves the issues presented therein. Either party may move to reopen this case at that time.

## III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that above-captioned matter is **STAYED** pending the FCC's resolution of the questions presented in Tekstar Commc'ns, Inc. v. Sprint Commc'ns Co., Civ. No. 08-1130 (JNE/RLE), 2009 WL 2155930 (D. Minn. July 14, 2009), All Am. Tel. Co., Inc. v. AT & T, Inc., 07 Civ. 861 (WHP), Docket 88 (Jan. 19, 2010), and Sancom, Inc. v. Qwest Communications Corp., Civ. No. 07-4147 (KES), 2010 WL 960005 (D.S.D. March 12, 2010), and upon a motion by either party.

cc. Counsel of Record